UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:10-CV-00064-R

**MICHAEL PHILLIPS**                                                                                        **PLAINTIFF**

v.

**LIFE INSURANCE COMPANY**
**OF NORTH AMERICA**                                                                                     **DEFENDANT**

## MEMORANDUM OPINION

This administrative review is before the Court on the Plaintiff's briefs for Judgement on the Administrative Record (DN 22). Defendant has responded (DN 25) and Plaintiff has replied (DN 27). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED. Judgment shall be entered for Defendant.

## BACKGROUND

Plaintiff Michael Phillips brings this action under Section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). He alleges Defendant Life Insurance Company of North America ("LINA") improperly denied his application for long-term disability ("LTD") benefits under a group disability plan ("LTD Plan"). Phillips also seeks a wavier of premiums ("Waiver") on a life insurance policy ("Life Plan") issued by LINA.

### I. Relevant Plan Provisions

Phillips is 53 years old. Prior to this litigation he was employed with Interstate Brands Corporation ("Interstate") as a Division Sales Manager. During his employment, Phillips was covered by the LTD Plan. Administrative Record ("AR") at 180-206. It provided two

1

definitions for disability:

> An employee is Disabled if, because of Injury or Sickness:
> 1.    he or she is unable to perform the material and substantial duties of his or her Regular Occupation, and solely due to an Injury or Sickness; he or she is unable to earn 80% or more of his or her Indexed Covered Earnings and
> 2.    after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material and substantial duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

*Id*. at 186. The first provided benefits for twenty-four months if the participants were unable to earn 80% of their pre-disability income in their regular occupation ("Own Occupation"). *Id*. at 186. The second provided disability benefits from twenty-five months on, if the participants were unable to perform any occupation for which they may be reasonably qualified ("Any Occupation"). *Id*. at 186. The Plan required participants to provide "[s]atisfactory proof of disability" before benefits would be paid. *Id*. at 193. Participants were also required to meet the Own Occupation definition continuously for 180 days ("Benefits Waiting Period"). *Id*. at 186. LINA possessed discretionary authority to interpret the LTD Plan and award benefits, but also paid the benefits from its own coffers. *Id*. at 200.

Phillips was further provided with access to a LINA-issued life insurance policy. *Id*. at 598-626. Premium payments were required of participants unless they were found to be disabled, whereupon they would be entitled to a Waiver. *Id*. at 606. The definition of disabled in the Life Plan tracked the Any Occupation definition in the LTD policy:

> An employee is Disabled if, because of Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

*Id*. at 619. Participants in the Life Plan could not qualify for the Waiver unless they satisfied the

2

definition of disability for six consecutive months.  LINA was given discretionary authority to award benefits and interpret the plan, but also had to pay benefits when the plan so required.[1]  *Id.* at 622-23, 609-10.

## II. Phillip's Condition

Phillips's medical problems arose between 1994 and 2007 in the form of neck pain, back pain, and sleep apnea.  On July 19, 2007, Phillips saw Dr. Benjamin Keeley complaining of neck pain.  Dr. Keeley observed that Phillips was suffering from a particularly severe case of sleep apnea.  *Id*. at 273.  He placed Philips on a one-month leave from work, later adding the restriction that Phillips could not drive a motor vehicle until he could be reevaluated on August 20, 2007.  *Id*. at 274, 277.  During the reevaluation, Dr. Keeley noted Phillips was still tired, unable to concentrate, and suffering from severe sleep apnea.  *Id*. at 274.  Even though he was still working and doing "basically paperwork," Keeley concluded Phillips was "at extreme risk of [an] accident if driving" and "should be considered completely and totally disabled for this and any other job."  *Id*. at 274.  Dr. Keeley issued Phillips another work excuse and told him to return in a month.  On that follow-up visit, Dr. Keeley documented similar diagnoses of severe sleep apnea, noting "Phillips is likely to be a candidate for disability."  *Id*. at 276.

---

[1] LINA is the "named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims."  AR at 622.  The Life Plan further establishes procedures by which LINA is to review claims, determine eligibility, and deny appeals.  *Id*.  The denial of an appeal is a final decision.  *Id*. at 622-23.  Reading the Life Plan as a whole, it confers discretionary authority on LINA in determining eligibility and interpreting its language, albeit not in the explicit manner of the LTD Plan.  *Cf. Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996) (administrator had discretionary authority where he could determine if participant had given "satisfactory proof of total disability"); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 980-84 (6th Cir. 1991) (administrator had discretionary authority where he could make benefits decision "on the basis of medical evidence satisfactory to the Insurance Company").

On September 10, 2007, Phillips applied for FMLA leave from Interstate and requested an application for LTD benefits. *Id*. at 64.  Three days later, Phillips submitted a claim for LTD benefits along with the Waiver. *Id*. at 3.  The claim indicated his last day of work was on September 11, 2007.  LINA subsequently requested additional information from Phillips and his doctors to evaluate his claim. *Id*. at 147-48.

LINA submitted Phillips's file to Alan Pieper, a registered nurse and case manager. After reviewing the file, Pieper found there was insufficient medical proof to show Phillips's condition was as severe as he claimed.  He wrote there were no tests for sensory deficits, no range of motion ("ROM") scales, no diagnostics available for review, no Epworth sleepiness scale available for review, and no cognitive testing present. *Id*. at 707.  Pieper thereby concluded the medical evidence was "insufficient to support the limitations and restrictions provided . . . which would be reasonably expected to preclude normal work activities." *Id*. at 707.  LINA notified Phillips by letter on March 20, 2008 that his claim for the Waiver had been denied, stating there was insufficient medical documentation to support an inability to perform the duties of Any Occupation. *Id*. at 125.

Phillips appealed this decision.  In support of his request for reconsideration, Phillips attached a medical report compiled by Dr. Keeley in November of 2007 ("November Report"). The November Report set out that Phillips was capable of carrying less than 10 lbs on a frequent basis, could sit or stand and walk for less than two hours, would need to take unscheduled breaks every few minutes, and would need to lie down during his work shift every few minutes because of his sleep apnea. *Id*. at 667-68.  Dr. Keeley wrote Phillips had "severe chronic pain and [was] at risk for falling asleep at any time due to sleep apnea despite treatment." *Id*. at 668.  Overall,

4

Dr. Keeley concluded Phillips's sleep apnea precluded him from even low stress jobs and his conditions were expected to last for at least twelve months. *Id*. at 670. Phillips also attached a sleep study performed by Dr. O'Bryan in March of 2007. Although the study yielded normal results, Dr. O'Bryan still diagnosed Phillips with "very, very severe obstructive sleep apnea syndrome." *Id*. at 685.

LINA forwarded Phillips's file to Dr. John Mendez and asked him to determine if the medical records provided a sufficient basis to determine that Phillips should be precluded from sedentary or light work duties. *Id*. at 369. After reviewing the medical records in the file, along with the November Report and Dr. O'Bryan's sleep study, Dr. Mendez made the following findings:

> Based on the provided records, the original assessment remains unchanged. This is because there remains no documentation of significant measured physical or cognitive limitations to support restrictions from any sedentary or light occupation that does not involve driving from 9/12/07 through 3/11/08 and from 3/12/08 through present. It is noted that CPAP has been found effective on testing with 15 cm water pressure, but Mr. Phillips is not compliant with it. Nevertheless, there is no documentation of cognitive deficits to support his claim of inability to concentrate, such as by mental status exam. There is also no documentation of musculoskeletal limitations or cardiac impairment. The latter could be assessed, for example, by exercise treadmill stress testing and METS measurement.

*Id*. at 371.[2] LINA thereafter sent Phillips a second letter denying his requests for the Wavier and his claim for LTD Benefits. *Id*. at 250-54. With the LTD claim, LINA relied on the LTD Plan's Own Occupation definition of disability, asserting Phillips had not shown he was unable to perform his occupation continuously throughout the Benefits Waiting Period. *Id*. at 253.

Phillips again filed a timely appeal to LINA for both the Waiver and his LTD benefits.

---

[2] Continuous positive airway pressure (CPAP) is a machine the helps an individual with sleep apnea breath during sleep.

*Id*. at 232.  He supplemented the record with a Functional Capacity Evaluation Summary ("FCE") and updated office notes from Dr. Keeley.  *Id*. at 233-44.  The FCE documented twelve significant physical defects with Phillips, including prolonged sitting, standing, and walking.  *Id*. at 239.  LINA submitted Phillips's file to another physician, Dr. Taylor.  After reviewing the medical evidence, including the FCE and office notes, he offered the following opinion:

> [Phillips] had an abnormal polysomnogram done 3/30/07 which was supportive of OSA.  Although reported daytime sleepiness, there is no documentation of measurable hypersomnolence such as abnormal Epworth Sleepiness Scale or Multiple Sleep Latency Test tests.  The reported Epworth Sleepiness Scale 9/6/07 was normal.  The file documents the effectiveness of C-PAP usage.  Except for CPAP, there is no documentation of other treatment for hypersomnolence such as medication like Provigil, Adderal, Dexadrine, Ritalin, etc.  Multiple references to neck pain in file, however no documentation on physical limitations such as decreased ROM/strength during the period 7/19/07 to 3/11/08 or from 3/11/08 until 9/23/08.  The FCE done 9/23/08 appears valid & reports decreased strength & ROM, the FCE is not time-concurrent and does not present evidence of functional deficits during the period 7/19/07 to 3/11/08 or from 3/11/08 until 9/23/08.  In addition, there is no evidence of physical limitations related to [Phillips's] bowel disease or cardiac deficits such as abnormal treadmill measurements.  In the absence of other documentation, it is my opinion, with a reasonable degree of medical certainty, that the medical records reviewed do not provide documentation of functional physical or cognitive deficits by clinically measurable testing (such as validated ROM/strength measurements, abnormal Epworth Sleepiness scale, abnormal Multiple Sleep Latency Test, abnormal metal status exams, or Neuropsychiatric Evaluation) to support restrictions indicated by the treating physician . . . .  The FCE shows some abnormal deficits however does not support inability to perform a sedentary occupation . . . .

*Id*. at 229.  Relying on Dr. Taylor's report, LINA denied Phillips's claims for the Waiver along with LTD benefits under the definition of Own Occupation disability.  *Id*. at 104-05.  The denial of the Waiver was reaffirmed by letter on July 24, 2008.  *Id*. at 646.

On May 5, 2009, an administrative law judge ("ALJ") for the Social Security Administration ("SSA") found Phillips to be permanently disabled.  Phillips sent LINA notification of this finding on May 9, 2009, and a copy of the written opinion on June 4, 2009.

6

*Id.* at 211, 233. Two days later, LINA replied to Phillips with a letter explaining that an award of Social Security would not impact the decision to deny his claim. *Id.* at 103. This lawsuit followed on March 9, 2010.

**STANDARD**

To begin with, the Court recognizes that "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The administrative record includes all documentation submitted during the administrative appeals process "because this information was necessarily considered by the plan administrator in evaluating the merits of the claimant's appeal." *Kalish v. Liberty Mut.*, 419 F.3d 501, 511 (6th Cir. 2005).

Generally, courts "review a plan administrator's denial of ERISA benefits de novo." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, when "a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to 'offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Still, while the arbitrary and capricious standard is deferential, it is not "'without some teeth.'" *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id*. As the Sixth Circuit has noted, without such a review "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan was able to find a single piece of evidence - no matter how obscure or untrustworthy - to support a denial of a claim for ERISA benefits." *Id*.

The standard of review may be affected by inherent conflict of interests, such as when a plan administrator both determines and pays for benefits. A court must consider this potential conflict of interest, but only as one factor in its analysis. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir.2007). Such conflicts do not change the standard of review. *Glenn*, 554 U.S. at 116-17.

## DISCUSSION

### I. Definition of disability

An important distinction to be made is between the varying definitions of disability in the LTD Plan and the Life Plan. To qualify for a Waiver under the Life Plan, participants must show they could not perform "any occupation for which [they] . . . may reasonably become qualified." AR at 619. While the LTD Plan's definition for Any Occupation disability tracks that of the Life Plan, the meaning of Own Occupation disability does not. Instead, it only requires participants to show they cannot perform the material and substantial duties of their regular occupation for the duration of the Benefits Waiting Period. *Id*. at 104-06.

LINA first denied Phillips's claim for Waiver under the Life Plan's Any Occupation definition, but ended the administrative review process with the LTD Plan's Own Occupation definition.[3]  Both parties concede the meaning for Any Occupation disability under either plan is broader than that for Own Occupation disability, and if Phillips was not entitled to the latter, the former would have been implicitly foreclosed to him.  Since LINA's final rejection reviewed Phillips's claim under the LTD Plan's definition for Own Occupation, the Court will review only whether LINA's decision under this definition was arbitrary and capricious.  Limiting the Court's examination is appropriate, as an administrator is not "required to evaluate [a participant's] eligibility under the 'any occupation' standard contemporaneously with its determination that she was not disabled from working her 'own occupation.'"  *Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 605-06 (7th Cir. 2008).  Thus, the salient question becomes whether the administrative record contained enough evidence to satisfy the LTD Plan's definition for Own Occupation disability.

**II. Medical evidence in the administrative record**

LINA rejected Dr. Keeley's diagnosis of a total physical and cognitive disability, noted discrepancies between the claims of disability and Phillips's actual functional limitations, highlighted treatments Phillips either rejected or neglected, and suggested there was other medication he could have taken to combat his symptoms.  Phillips responds in his brief that these concerns by LINA's medical reviewers do not change the thrust of the administrative record: two of his treating physicians concluded he had severe sleep apnea, neck pain, and back pain, all of

---

[3] LINA never considered whether Phillips was disabled for Any Occupation Benefits under the LTD Plan's language.

which precluded him from working in his current position.

In a battle of medical experts under ERISA, an administrator is under no obligation to accept the opinion of a treating physician over that of a physician who has simply reviewed the claimants' medical files. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003); *Hurse v. Hartford Life and Accident Ins. Co.*, 77 F. App'x 310, 315 (6th Cir. 2003). An administrator of an ERISA plan may also require reasonable documentation detailing a claimant's functional capacity when making a disability determination. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166-67 (6th Cir. 2007). Still, where treating physicians have provided reliable medical evidence supporting a particular finding, an administrator may not arbitrarily disregard that proof. *Id.* at 166 (citing *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006)).

To be sure, the administrative record contains evidence supporting Phillips's claims of disability. However, the majority of it is terse, conclusory, and unaccompanied by medical testing. For example, on a form provided by LINA, Dr. Keeley reported that Phillips would have to restrict his physical activities at work. AR at 351. This diagnosis mirrors the November Report, which set out Phillips could not lift more than 10 Lbs on an occasional basis and would not be able to stand, walk, or sit for more than two hours a day. *Id.* at 667. Nevertheless, these reports by Dr. Keeley were not based on specific testing of Phillips's musculoskeletal limitations, a mental status exam, or cardiac impairment. *Id.* at 371. The original doctor's notes that gave rise to his work absences were unaccompanied by lab reports or medical testing to support the conclusion that Phillips's was "totally and permanently disabled." *Id.* at 273-76. One of the only specific medical procedures Phillips had during the Benefits Waiting Period, a

CT scan of his knee, was merely referred to in Dr. Keeley's notes - no other documentation of the scan was provided.  What is more, although Phillips ruptured several disks in his back in 1998, underwent surgery and physical therapy to correct the issue, and Dr. Keeley suspected this injury of causing some of Phillips's problems, none of this information was submitted to LINA during the review.

An administrator may reject a treating doctor's opinion where it is not supported by objective medical evidence supporting the patient's malady.  *See Boone v. Liberty Life Assur. Co. of Boston*, 161 F. App'x 469, 473-74 (6th Cir. 2005) (treating physician's opinions were not arbitrarily disregarded when they were not supported by objective medical evidence).  Here, LINA's rejections mimicked the overarching concerns of its medical reviewers: there was little medical proof provided supporting the severity of Phillips's symptoms other than Dr. Keeley's subjective beliefs.  The letter rejecting the first appeal stated that despite the findings of his treating physicians, the lack of testing impeded an accurate review of Phillips's condition.  AR at 253.  The rejection letter for the second appeal is much the same, discussing the lack of both abnormal testing for hypersombolence and evidence documenting his functional deficits for the Benefits Waiting Period.  *Id*. at 104-05.  As the Life Plan and LTD Plan place the burden of proving a disability on Phillips, LINA's decision cannot be said to be arbitrary and capricious when he failed to do so.  *See Curry v. Eaton Corp.*, 400 F. App'x 51 67-68 (6th Cir. 2010) (administrator's decision not arbitrary and capricious where burden was on participant to provide objective medical evidence).

In addition, LINA did not hide the ball - it was explicit in its communications with Phillips describing the type of objective medical evidence needed to more thoroughly vet his

claim. The second denial petitioned Phillips for some or all of the following information: "ROM scales, strength scales, MRI, CT, Plain x-rays, EMG, NCS, SEP, MMSE, Neuropsychological Testing, MMPI, TOMM, exercise treadmill stress testing, and METs measurements, etc." AR at 254. Under the terms of the LTD Plan, Phillips was required to undergo the procedures he thought necessary and submit the results to LINA for review; yet, he chose only to submit the FCE summary, which contained outdated information on his ROM and strength scales. Since Phillips failed to provide the vast majority of the information requested, LINA cannot be faulted in its rejection of the treating physicians' unsupported diagnoses. *See Morris v. Am. Electric Power Long-Term Disability Plan*, 399 F. App'x 978, 988 (6th Cir. 2010) (denial of benefits was not arbitrary and capricious where participant declined to submit medical evidence the administrator specifically requested).

Even if Phillips did show the signs of a disability, portions of the administrative record illustrate that he rejected treatments that could have alleviated his symptoms. Medical records indicate Phillips's condition could have been treated with weight loss, CPAP, oral appliance, overnight oximetry, or ENT referral. His treating physician noted however Phillips was "absolutely not interested in any of these options." AR at 348. Dr. O'Bryan further said that despite orders to the contrary, Phillips had voluntarily stopped using the CPAP machine even after it had been shown to be effective. Noncompliance with a treatment regime may be used by the administrator in deciding whether disability benefits are proper. *See e.g., McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443-44 (6th Cir. 2005) (ERISA plan entitled to terminate LTD benefits where participant refused to take part in treatment schedule); *Cox v. Prudential Ins. Co. Of Am.*, No. 09-cv-00576, 2010 WL 194940, at *2 (D. Colo. Jan. 19, 2010) (noncompliance with alcohol

abuse treatment was basis to terminate LTD benefits); *Skipp v. Hartford Life Ins. Co.*, No. CCB-06-2199, 2008 WL 346107, at *8 (D. Md. Feb. 6, 2008) (noncompliance considered by administrator in reviewing claim for benefits).  LINA's reliance on this evidence therefore was not arbitrary and capricious.

Altogether, the Court cannot overturn LINA's decision in the absence of specific medical procedures by Phillips's physicians, the unexplored and neglected avenues of treatment, and the statements by LINA's medical reviewers about the inadequacy of the record.

### III. Department of Labor job description

Phillips asserts LINA's medical reviewers ignored the discrepancy between the physical requirements of his job and Dr. Keeley's restrictions.  Courts typically analyze a plan's decision denying own-occupation disability benefits by first reviewing the job description of the participant, taking their cues from either the Department of Labor ("DOL") definitions or specific provisions in the ERISA covered plan.  *See Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006) (using DOL dictionary to define a participant's job description); *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 272 (4th Cir. 2002) (permitting reference to the DOL descriptions where the positions "involve comparable duties").  References to a DOL job description in deciding disability benefits may constitute arbitrary and capricious behavior where the participant's job description does not comport the one chosen by the administrator.  *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 43-44 (6th Cir. 2007).

Phillips was classified as a "Supervisor, Route Sales-Delivery Drivers," a light-strength position, which called upon him to lift, carry, push, and pull 20 Lbs occasionally, and 10 Lbs

frequently.  AR at 341.  He insists the denial of benefits was arbitrary and capricious because these material requirements of his position were precluded by Dr. Keeley's restrictions.  Besides the text from Dr. Keeley's October and November Reports, there was no objective medical evidence submitted to LINA supporting Phillips's assertion that he met the definition of Own Occupation disability in the Benefits Waiting Period.  Dr. Keeley or Dr. O'Bryan could have conducted ROM or strength tests to fortify the lifting restrictions during that time frame but decided against it.  Indeed, almost all of the medical records prior to the FCE dealt with Phillips's sleep apnea and not the physical demands of his position.  Each of LINA's medical reviewers touched upon the lack of documents showing Phillips's physical limitations and suggested the type of evidence they needed to fully evaluate his claim.  Since Phillips did not provide proof buttressing Dr. Keeley's restrictions, LINA's rejection of them was not arbitrary and capricious.  *Curry*, 400 F. App'x at 59 ("[A] lack of objective medical evidence upon which to base a treating physician's opinion has been held sufficient reason for an administrator's choice not to credit that opinion." (citing *Boone*, 161 F. App'x at 473)).

### IV. Rejection of FCE

Phillips contends LINA's treatment of the FCE was improper.  In his report, Dr. Taylor did not accept the FCE because it was not time-concurrent with the Benefits Waiting Period.  Phillips says the FCE's conclusions about his significant physical deficits parallel the diagnoses of his treating physicians, and therefore should have been considered during the file review.

Phillips's reliance on the FCE is misplaced.  LINA needed information on Phillips's physical limitations during the Benefits Waiting Program, from September 11, 2007 until March 10, 2008.  The FCE, however, was performed on September 24, 2008, nearly six months too late.

The LTD Plan and Life Plan require that participants both prove they meet the Plans' definitions of disability and they were continuously disabled during the Benefits Waiting Period. An administrator may require a participant to provide objective medical evidence of a disability within confines of the plan's language. *See Curry*, 400 F. App'x at 59; *Boone*, 161 F. App'x at 473; *see also Cooper*, 486 F.3d at 166. Given the time requirement imposed on Phillips, LINA's rejection of this outdated report was neither an unreasonable response nor evidence of an arbitrary and capricious decision. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) ("[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989))).

### V. Lack of Physical Exam

Phillips complains LINA should have expanded its investigation from that of a mere file review to one that included a physical exam. A file review of a benefits decision is not inherently objectionable if performed by a qualified medical professional. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). Yet, where the administrator foregoes a physical examination, questions may be raised concerning the accuracy of the benefits decision. *Bell v. Ameritech Sickness and Acc. Disability Ben. Plan*, 399 F. App'x 991, 1000 (6th Cir. 2010) (citing *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009)). Administrators' benefits determinations are arbitrary and capricious when they make credibility determinations without the aid of a physical exam. *Id.*

LINA's medical reviewers did not dismiss out of hand the treating physicians' diagnoses or make credibility determinations about Phillips's symptoms; instead, they found the objective

medical evidence was insufficient to show the presence of a disability.  The medical reviewers conducted an extensive search of the available medical records and instructed Phillips to submit specific medical documentation needed for the review.  Their opinions are reasonably linked to the lack of objective medical evidence in the record about Phillips's disability during the Benefits Waiting Period and therefore were not arbitrary and capricious.  Lastly, reliance on a file review was proper since the Life Plan and LTD Plan place the burden on the participant to produce medical documentation in support of a disability.  *See id*. (reaching same conclusion where burden of proof was on participant).

### VI. SSA decision

Phillips contends LINA did not take into account the SSA's disability determination.  LINA responds it was not required to reverse or reevaluate its denial of benefits in the face of the SSA's May 2009 ruling.  It also argues the SSA's decision does not change the earlier conclusion that Phillips had not adequately shown he was disabled.

Although a SSA determination on disability is not controlling on an administrator's benefits determination, it "is far from meaningless."  *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005).  A favorable SSA disability decision for a participant, at a minimum, provides support for the medical evidence in the administrative record.  *Id*.  SSA decisions should also "garner more attention when the plan administrator requires and actively requests the claimant to apply for such Social Security benefits."  *Delisle v. Sun Life Assur. Co. of Canada*, 636 F. Supp. 2d 561, 569 (E.D. Mich. 2007).  Where the plan mandates the participant apply for Social Security disability to reduce the amount of their claim, the administrator "should not be able to reject blindly the SSA's determinations."  *Id*.  If an administrator encourages plan

participants to apply for disability with the SSA, incurs some benefit from an award of SSA benefits, and then chooses not to explain why the SSA's determination did not impact the plan's benefits decision, "the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious." *Bennett v. Kemper Nat. Servs., Inc.*, 514 F.3d 547, 554 (6th Cir. 2008) (citing *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006)).

The documents present in the administrative record belie LINA's argument that it gave the SSA's decision due consideration. LINA was only in possession of the ALJ's written opinion for one day before it sent a correspondence to Phillips rejecting the agency's decision. The letter did not address the SSA opinion with any specificity or compare its reasoning to that of LINA's medical reviewers. Rather, LINA offered perfunctory language on the different policies and procedures of the SSA, stating "the award letter from Social Security does not prove the existence of a medical condition that would preclude you from performing your or any occupation . . . ." AR at 103. Although the Sixth Circuit does not mandate that administrators provide an elaborate analysis when they decide to contradict an SSA benefits decision, it does require a "discussion about why the administrator reached a different conclusion from the SSA." *Bennett*, 514 F.3d at 553 n. 2. This Court cannot characterize LINA's cursory treatment of the SSA's decision as a "discussion." *See Rist v. Hartford Life and Acc. Ins. Co.*, No. 1:05-CV-492, 2011 WL 2489898, at *29-30 (S.D. Ohio Apr. 18, 2011) ("Hartford's statement that it uses a 'different definition of disability' hardly qualifies as any meaningful discussion of the SSA's decision."). Furthermore, LINA's letter ignored the more favorable definition of disability used in the LTD Plan's definition of Own Occupation disability as compared to the more stringent definition relied upon by the SSA. *White v. Airline Pilots Ass'n, Intern.*, 364 F. Supp. 2d 747,

767-68 (N.D. Ill. 2005) (explaining a participant generally has more difficulty proving disability under the SSA's definition than a plan using an own occupation definition).  Since LINA required Phillips to apply for SSA disability to offset its potential LTD payments, did not discuss the SSA decision, and ignored the varying disability definitions, this factor cuts toward a finding the denial of benefits was arbitrary and capricious.

Even with LINA's unsatisfactory treatment of the SSA ruling, "the language of *Bennett* indicates only that the SSA award be weighed in favor of a finding that the decision was arbitrary and capricious, not that such a decision was arbitrary and capricious per se." *Morris v. Am. Electric Power Long-Term Disability Plan*, 399 F. App'x 978, 986 (6th Cir. 2010); *see Delisle*, 636 F. Supp. 2d at 570.  Here, it is insufficient to tip the scales in Phillips's favor.  Had LINA adequately reviewed the SSA disability decision, it would have found striking differences between the medical evidence before its medical reviewers and the ALJ.  The ALJ discussed Phillips's history of degenerative disk and joint disease in detail, including past MRI results, disc protrusion at the C6-7 level, and musculoskeletal injuries he sustained during automobile and work-related accidents.  AR at 220.  The ALJ also referred to Dr. Ira Pottter's opinion on Phillips's inability to work a sedentary occupation and Susan Lear's, a psychological evaluator, impression that he could not tolerate the stress and pressures of normal work activity.  *Id*.  This evidence was not submitted to LINA prior to the SSA decision, and though the medical documentation was referenced by exhibit numbers in the ALJ's opinion, it does not appear in the administrative record.  A ruling by the SSA contrary to LINA's decision is not helpful to Phillips when it is premised on discrete medical tests, a sustained showing of injuries to his back, and the opinion of two additional medical providers, none of which were properly before the

administrator.  *Cf. Washington v. Ameritech Sickness and Acc. Disability Benefit Plan*, 66 F. App'x 656, 659 (7th Cir. 2003) ("[A]n SSA finding of disability has been deemed irrelevant where the SSA file was not part of the materials before plan administrators, even though the plan was apprised of the SSA's finding."); *Mitchell v. The Hartford*, No. 3:05CV-432-H, 2006 WL 1548956, at *6 (W.D. Ky. June 2, 2006) (where plan participant did not forward SSA disability opinion or evidence upon which it relied, administrator's disagreement with it was not arbitrary and capricious).  Accordingly, the determination by the SSA does not counsel changing LINA's benefits decision.

### VII. Conflict of Interest

Finally, Phillips argues the Court should consider LINA's inherent conflict of interest.  As neither party disputes that LINA both determines and pays benefits, a potential conflict does exist.  *Cooper*, 486 F.3d at 165.  Though one of many factors in the Court's review, a conflict should not be a substantial factor if the insurer has taken steps to reduce bias, such as "walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking . . . ."  *Glenn*, 554 U.S. at 116-17.  The First Circuit has interpreted these statements to mean "courts are duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflicts." *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 9 (1st Cir. 2009).

There is no evidence in the record about the steps LINA has or has not taken to reduce the threat of bias in its benefits decisions.  Instead, LINA directs the Court to *Mattox v. Life Ins. Co. of North America*, No. 1:06-CV-2090, (N.D. Ga. 2009), an unpublished case from the

Northern District of Georgia that thoroughly reviewed LINA's internal procedures and determined the conflict of interest played no part in a determination for benefits. Irrespective of *Mattox*'s conclusion, the Court is without direct evidence of LINA's conflict and therefore will count this factor in Phillips's favor. *See Thies v. Life Ins. Co. of N. Am.*, No. 5:09–CV–98, 2011 WL 3624673, at *12-13 (W.D. Ky. Aug. 17, 2011) (where an administrator did not supply evidence surrounding conflict, it was appropriate for court to examine conflict in favor of overturning benefits decision).

Even with the conflict of interest in Phillips's column, it is not enough to overturn LINA's ruling. Ultimately, the holes in the administrative record provide sufficient cover to LINA when it says there was insufficient evidence to rule him disabled; as a result, the Court must not disturb the decision.

## CONCLUSION

The standard of review guides this opinion. Though the Court remains unconvinced that LINA could not determine Phillips was disabled from the record before it, nor can it say the decision to deny benefits under the LTD Plan or the Life Plan was arbitrary and capricious. The Court is concerned about its conclusion because it appears the evidence to support Plaintiff's claim was available to him. However, such evidence was not submitted to Defendant, and for that reason, the Court reaches the conclusion it has.

Plaintiff's motion for judgment on the administrative record is HEREBY DENIED and judgment is entered for Defendant. This matter is DISMISSED from the active docket. An appropriate order shall issue.